1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BANK OF AMERICA, N.A., as Successor
     Trustee to LaSalle Bank National
11   Association, as Trustee for the Registered
     Holders of Morgan Stanley Capital I Inc.,
12   Commercial Mortgage Pass-Through
     Certificates, Series 2004-HQ4, a national
13   banking company,

14             Plaintiff,                    No. 2:09-cv-03557 JAM KJN PS

15        v.

16   ABOLGHASSEM ALIZADEH, and
     individual, KOBRA ALIZADEH, an
17   individual,

18             Defendants.                   FINDINGS AND RECOMMENDATIONS
     _____/
19

20             Presently before the court are defendants' respective motions to set aside the

21   default entered against them by the Clerk of Court.  Defendants are proceeding without counsel.[1]

22   The undersigned permitted the filing of such motions and advised the parties that a hearing on

23   the motions would be held only if necessary.  (Order, Dec. 8, 2010, at 3-4, Dkt. No. 42.)  Because

24   oral argument would not materially aid the resolution of the pending motion, the undersigned

25   _____

26        [1]  This action proceeds before the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).

1

1   resolves this matter on the briefs and record without a hearing.  See E. Dist. Local Rule 230(g).

2   The undersigned has fully considered defendants' motions and appropriate portions of the record

3   in this case and, for the reasons that follow, recommends that defendants' motions to set aside the

4   entry of default be granted.

5   I.      BACKGROUND

6           A.      The Underlying Loan and Guaranty Agreement

7                   Plaintiff alleges that on or around August 18, 2004, Morgan Stanley Mortgage

8   Capital Inc. ("Morgan Stanley") made a loan to Douglas Pointe, LLC ("Douglas Pointe") in the

9   amount of $20,720,000.[2]  (Compl. ¶ 7.)  The loan is evidenced by a Loan Agreement and

10  Promissory Note executed in Morgan Stanley's favor and is secured by, among other things, a

11  Deed of Trust and Security Agreement and an Assignment of Leases and Rents, all of which are

12  dated August 18, 2004.  (Id. ¶ 8 & Exs. A-D.)  These documents are occasionally referred to

13  herein as the "loan documents."  The deed of trust encumbers three pieces of real property in

14  Roseville, California.  (Id. ¶ 9.)

15                  On or around August 18, 2004, each defendant and Kobra Properties, a California

16  general partnership, executed a guaranty agreement ("Guaranty Agreement"), "which guaranteed

17  payment and performance of the 'full amount of the Debt' under the [promissory note]."[3]

18  (Compl. ¶ 23 & Ex. I at § 1.2.)  This Guaranty Agreement, which is the subject of the pending

19  dispute, indicates that defendants are the owners of "a direct or indirect interest" in Douglas

20  Pointe.  (Compl., Ex. I at 1.)

21  ────────────────

22      [2]  Plaintiff refers to Douglas Pointe as a defendant in its complaint.  (Compl. ¶ 7.)  Douglas
    Pointe is not named as a defendant in the caption of the complaint, and plaintiff does not seek relief
    relative to Douglas Point.  Plaintiff's erroneous reference to Douglas Pointe as a defendant appears
23  to be inadvertent.

24      [3]  Although the Guaranty Agreement indicates that Kobra Properties is an additional
    guarantor under the Guaranty Agreement, plaintiff has not named Kobra Properties as a defendant
25  herein.  An independent review of the dockets for the United States Bankruptcy Court for the Eastern
    District of California reveals that Kobra Properties has filed a Chapter 11 bankruptcy petition.  See
26  In re Kobra Properties, No. 08-bk-37271 (Bnkr. E.D. Cal.).

1    Morgan Stanley subsequently assigned the deed of trust and other loan documents

2 to plaintiff, effective October 19, 2004, through a document entitled Assignment of Deed of

3 Trust and Security Agreement and Assignment of Assignment of Leases and Rents.  (Compl.

4 ¶ 11 & Ex. E.)  Plaintiff alleges that pursuant to this assignment, plaintiff became the "owner of

5 the [promissory note] and beneficiary, secured party and/or assignee under" the loan documents.

6 (Id. ¶ 11.)

7    In accordance with the loan documents, Douglas Pointe was obligated to pay to

8 plaintiff "monthly installments of principal, interest, and tax, insurance, and reserve escrows."

9 (Compl. ¶ 12.)  From around September 2008, through the time plaintiff filed its complaint in

10 late 2009, Douglas Pointe allegedly failed to make timely payments as required, and the total

11 accrued balance overdue, owing, and unpaid as of December 1, 2009, was alleged to be

12 $22,322,767.01.  (Id. ¶¶ 13, 20.)

13    In a letter dated October 15, 2008, plaintiff demanded that Douglas Pointe cure

14 the defaults under the loan document within seven days.  (Id. ¶ 14 & Ex. F.)  Defendants, as

15 guarantors, were copied on this demand letter.  (Id., Ex. F.)  The default remained uncured.  (Id.

16 ¶ 15.)  Plaintiff alleges that, nevertheless, on November 3, 2008, Douglas Pointe, without prior

17 written consent from plaintiff, further encumbered the property that secured the deed of trust with

18 a junior lien to Kobra Properties, an alleged "insider," which "automatically affected [*sic*]

19 entitlement to a prepayment premium" and violated the "Due on Sale and Encumbrance"

20 provision in Section 4.2.1 of the Loan Agreement.  (Id. ¶¶ 21-22.)  In a letter dated November 4,

21 2008, plaintiff informed Douglas Pointe of the acceleration of the loan because of the defaults.

22 (Id. ¶ 16 & G.)  As with the demand letters, defendants, as guarantors, were copied on this letter.

23 (Id., Ex. G.)

24 ////

25 ////

26 ////

1          B.    Procedural History

2                Plaintiff filed a complaint on December 23, 2009, alleging that defendants had

3    breached their loan guaranty obligations.[4]  Plaintiff's first claim for relief alleges that defendant

4    Abolghassem Alizadeh is in material breach of the Guaranty Agreement and has failed to meet

5    his obligations under the Guaranty Agreement upon demand to do so.  (Compl. ¶ 25.)  Plaintiff's

6    second claim alleges that defendant Kobra Alizadeh is in material breach of the Guaranty

7    Agreement and has failed to meet her obligations under the Guaranty Agreement upon demand to

8    do so.  (Id. ¶ 29.)  Plaintiff alleges that it has "performed all unexcused obligations it was bound

9    to perform under the Loan Documents, and under the Guaranty."  (Id. ¶¶ 26, 30.)  As to each

10   defendant, the complaint seeks an award "of at least $22,322,767.01, plus accruing interest, and

11   late charges," and attorneys' fees and costs.  (Id. at 6.)

12               Plaintiff filed two proofs of service with the court representing that on January 12,

13   2010, plaintiff, through a process server, attempted personal service on defendants at the

14   following address: 3001 Lava Ridge Ct., Suite 340, Roseville, California 95661.  (Dkt. Nos. 5,

15   6.)  Each proof of service states that, on January 12, 2010, plaintiff effectuated substituted service

16   by leaving the summons, complaint, and related court documents with Steve Colgate, an "onsite

17   attorney."  (Dkt. No. 5 at 1; Dkt. No. 6 at 1.)  The proofs of service also indicate that plaintiff's

18   process server also served defendants by mail, with a January 13, 2010 date of mailing.[5]  (Dkt.

19   No. 5 at 2; Dkt. No. 6 at 2.)

20               On February 19, 2010, following the filing of plaintiff's request for entry of

21   default, the Clerk of this Court entered a certificate of entry of default against both defendants.

22

23        [4]  Plaintiff commenced a non-judicial foreclosure of the encumbered real property, and on
     or around June 23, 2009, Douglas Pointe filed for Chapter 11 bankruptcy in the bankruptcy court for
24   the Eastern District of California.  (Compl. ¶¶ 18-19; see In re Douglas Pointe, LLC, No. 09-32854
     (Bnkr. E.D. Cal.).)
25
         [5]  The proof of service also represents that personal service had also been attempted on
26   January 8, 2010, and January 11, 2010.  (Dkt. No. 5 at 3; Dkt. No. 6 at 3.)

4

1   (Clerk's Cert. of Entry of Default, Dkt. No. 9.)  In entering default, the Clerk of Court stated that

2   it appeared from the record and papers on file in the action that defendants had been duly served

3   with process yet failed to appear, plead, or answer plaintiff's complaint within the time allowed

4   by law.  (Id.)

5              On June 10, 2010, plaintiff filed a motion for default judgment and related

6   moving papers.[6]  (Mot. for Default J., Dkt. Nos. 11-14.)  Plaintiff's motion for default judgment

7   requested entry of judgment on plaintiff's two claims for relief, which seek to impose joint and

8   several liability on defendants for breach of the Guaranty Agreement.  (See Compl. ¶¶ 24-31.)  At

9   the time of filing the motion, plaintiff sought a judgment in the amount of "at least

10  $22,993,602.20," prejudgment interest, and contractual attorneys' fees in an amount of

11  $156,935.60.  (Memo. of P. & A. In Supp. of Mot. for Default J. at 10-11, Dkt. No. 12.)

12  Defendants initially filed no response to plaintiff's motion for default judgment.

13             On July 9, 2010, the undersigned conducted a hearing on plaintiff's motion for

14  default judgment.  (Minutes, Dkt. No. 17.)  In the order entered after the hearing, the undersigned

15  stated:

16          At the hearing, the undersigned expressed concerns regarding a number of
            issues raised by the moving papers and record in this case, including
17          whether defendants were served with process in this case consistent with
            the Federal Rules of Civil Procedure.  Plaintiff's counsel suggested that, if
18          permitted, plaintiff would make efforts to alleviate the court's concerns
            regarding service of process and would prepare and submit supplemental
19          briefing to address the court's other concerns.

20  (Order, July 9, 2010, Dkt. No. 18.)  In addition to service-related concerns, the order specifically

21  identified several substantive concerns that raised questions about the propriety of a default

22  judgment.  (Id. at 2-4.)  The court permitted plaintiff to attempt to re-serve process on defendants

23  and file supplemental briefing.  (Id. at 4.)

24             Plaintiff filed supplemental briefing and attempted to re-serve the summons, the

25

26          [6]  It appears from the court's docket and the record that plaintiff did not initially serve
    defendants with either its request for entry of default or its motion for default judgment.

complaint, and numerous other documents on defendants.  (<u>See</u> Dkt. Nos. 19-23, 24-33.)  It appears that service was successful.  In response to being served with process and other documents filed in this matter, defendants filed a letter with the court on September 7, 2010, which asserted, in part, that they had not been served with process in this lawsuit until August 16, 2010.  (Letter, Dkt. No. 27.)  This letter states that defendants would be able to retain counsel given "additional time" to do so.  Also on September 7, 2010, defendants filed with the court a letter from defendants to plaintiff's counsel, which includes representations consistent with defendants' letter to the court and expresses "shock" at the fact that plaintiff was unable to serve defendants in this matter when plaintiff's counsel had previously located defendants through defendants' bankruptcy attorney.  (Letter, Dkt. No. 28.)  This second letter further states that defendants "are more than happy to respond, no later than November 8, 2010, to these pleadings." (<u>Id.</u>)

    On September 8, 2010, plaintiff filed a Notice of Acknowledgment of Receipt of Summons and Complaint, which appears to have been signed by defendant Abolghassem Alizadeh on August 31, 2010.  (Dkt. No. 34.)  Also on file with the court is an undated acknowledgment of receipt of the summons and complaint executed by defendant Kobra Alizadeh.  (Dkt. No. 36.)

    The undersigned entered an order in response to the parties' submissions.  (Order, Oct. 12, 2010, Dkt. No. 35.)  The undersigned noted that although it was "clear from a supplemental declaration of plaintiff's counsel that plaintiff believes that defendants have purposefully avoided service in this matter in order to delay the proceedings," it was unclear whether defendants truly intended to defend themselves in this action.  (<u>Id.</u> at 2-3.)  This lack of clarity stemmed, in part, from the fact that defendants had not attempted to file an answer to plaintiff's complaint or a motion to set side the clerk's entry of default pursuant to Federal Rule of Civil Procedure 55(c).  (<u>Id.</u> at 3.)  Accordingly, the undersigned ordered defendants to file a statement with the court clarifying: (1) whether defendants intended to defend themselves against

1   plaintiff's lawsuit, including whether defendants intended to file a motion to set aside the clerk's

2   entry of default; and (2) whether defendants intended to appear pro se or through counsel.  (See

3   id.)

4          On November 8, 2010, defendants filed a response to the court's October 12, 2010

5   order.  (Response, Nov. 8, 2010, Dkt. No. 38.)  In that response, defendants stated that they: (1)

6   intended to defend themselves in this matter, (2) were ready to promptly file a motion to set aside

7   the clerk's entry of default, and (3) intended to obtain counsel if necessary.  (Id.)

8          In response to defendants' submission, the undersigned entered an order

9   permitting defendants to file a motion to set aside the entry of default.  (Order, Dec. 8, 2010, at 3,

10  Dkt. No. 42.)  On January 13, 2011, each defendant filed a motion to set aside the entry of

11  default.  (K. Alizadeh's Mot. to Set Aside Clerk's Entry of Default, Dkt. No. 43; A. Alizadeh's

12  Mot. to Set Aside Clerk's Entry of Default, Dkt. No. 44.)  Plaintiff opposes defendants' motions.

13  (See Pl.'s Opp'n to Defs.' Mot. to Set Aside Clerk's Entry of Default, Dkt. No. 45.)

14  II.    LEGAL STANDARDS

15         Federal Rule of Civil Procedure 55(c) provides that "[t]he court may set aside an

16  entry of default for good cause."  "The court's discretion is especially broad where . . . it is entry

17  of default that is being set aside, rather than a default judgment."  O'Connor v. State of Nev., 27

18  F.3d 357, 364 (9th Cir. 1994).

19         The Ninth Circuit Court of Appeals recently restated that a court must consider

20  three factors in determining whether good cause exists: "'(1) whether [the party seeking to set

21  aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no]

22  meritorious defense; or (3) whether reopening the default judgment would prejudice' the other

23  party."  United States v. Signed Personal Check No. 730 of Yubran S. Mesle, 615 F.3d 1085,

24  1091-94 (9th Cir. 2010) (hereinafter, "Mesle") (modification in original) (quoting Franchise

25  Holding II v. Huntington Rests. Group, Inc., 375 F.3d 922, 925-26 (9th Cir. 2004)).  Under this

26  disjunctively framed standard, "a finding that any one of these factors is true is sufficient reason

7

1   for the district court to refuse to set aside the default." Id.  The party seeking relief from the entry

2   of default bears the burden of showing that these factors favor such relief.  See Franchise

3   Holding II, 375 F.3d at 926.

4          Resolution of a motion to set aside the entry of default is necessarily informed by

5   the well-established policies favoring resolution of matters on the merits and generally

6   disfavoring default judgments.  See Mesle, 615 F.3d at 1091 ("Crucially, . . . judgment by default

7   is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be

8   decided on the merits.") (citation and quotation marks omitted); Westchester Fire Ins. Co. v.

9   Mendez, 585 F.3d 1183, 1189 (9th Cir. 2009) ("As a general rule, default judgments are

10  disfavored; cases should be decided upon their merits whenever reasonably possible.").

11  Moreover, a panel of the Ninth Circuit Court of Appeals recently recognized that the Court of

12  Appeals's "rules for determining when a default should be set aside are solicitous towards

13  movants, especially those whose actions leading to the default were taken without the benefit of

14  legal representation." Mesle, 615 F.3d at 1089.

15  III.   DISCUSSION

16         A.     Whether Defendants Engaged In Culpable Conduct That Led to the Default

17         Plaintiff argues that defendants attempted to evade service of process for nearly

18  one year and that this culpable conduct both led to the entry of default and favors denying

19  defendants' motions to set aside the entry of default.  (Pl.'s Opp'n at 5-6.)  Defendants' response

20  appears to consist of two arguments.  First, they contend, without elaboration, that the default

21  was the result of defendants' excusable inadvertence.  Second, they contend that plaintiff's

22  claims regarding defendants' alleged attempts to evade service are unfounded because plaintiff's

23  counsel purportedly communicates with defendants on a regular basis in the context of the

24  Douglas Pointe bankruptcy action.

25         With respect to a defendant's culpable conduct, two standards governing this

26  inquiry have arisen in decisions of the Ninth Circuit Court of Appeals.  Under one line of cases

8

1   announcing a more stringent standard, a defendant's conduct is culpable if he or she "'has

2   received actual or constructive notice of the filing of the action and failed to answer.'"  Franchise

3   Holding II, 375 F.3d at 926 (quoting Direct Mail Specialists, Inc. v. Eclat Computerized Techs.,

4   Inc., 840 F.2d 685, 690 (9th Cir. 1988)).   Under the second line of cases, "a defendant's conduct

5   is culpable if he has received actual or constructive notice of the filing of the action and

6   *intentionally* failed to answer."  TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 697 (9th

7   Cir. 2001) (hereinafter, "TCI Group") (emphasis in original, citation and quotation marks

8   omitted).   Under the latter formulation, the "the term 'intentionally' means that a movant cannot

9   be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a

10  failure to answer as culpable, the movant must have acted with bad faith, such as an 'intention to

11  take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise

12  manipulate the legal process.'"  Mesle, 615 F.3d at 1092 (citation omitted) (stating, in addition,

13  that "it is clear that simple carelessness is not sufficient to treat a negligent failure to reply as

14  inexcusable, at least without a demonstration that other equitable factors, such as prejudice,

15  weigh heavily in favor of denial of the motion to set aside a default").

16         In the Court of Appeals's recent decision in Mesle, the panel explained that the

17  standard from Franchise Holding II, which does not consider the defaulting party's intent, does

18  not represent the "ordinary standard" for Rule 55(c) motions.  Mesle, 615 F.3d at 1093.  The

19  panel in Mesle further stated that "[i]t is possible to reconcile" the two standards and that

20  whether one standard or the other would be applied might depend on the sophistication of the

21  defaulting party.  Id. (stating that the court had "never" applied the standard from Franchise

22  Holding II to deny relief "except when the moving party is a legally sophisticated entity or

23  individual").   The panel suggested that the tougher standard from Franchise Holding II

24  potentially applies when the defaulting party is legally sophisticated or represented by counsel

25  because "[w]hen considering a legally sophisticated party's culpability in a default, an

26  understanding of the consequences of its actions may be assumed, and with it, intentionality."  Id.

9

However, the panel did not expressly resolve the question because the defaulting party in <u>Mesle</u> was not a lawyer and was not represented by counsel. <u>Id.</u> ("Here, we need not determine, however, whether the *Franchise Holding II* standard applies to more than sophisticated parties represented by counsel who may be presumed to be aware of the consequences of their actions. It is sufficient to observe that Mesle is not a lawyer and that he was unrepresented at the time of the default; accordingly, the proper standard to apply was that of *TCI Group*.").

Here, as in <u>Mesle</u>, nothing suggests that defendants are attorneys, and defendants were not represented by counsel in this action at the time of the entry of default. Indeed, despite defendants' suggestions that they intend to retain counsel in this action, no attorney has appeared on their behalf. Thus, the standard from <u>TCI Group</u> applies here.

Applying this standard, the undersigned cannot conclude with certainty that defendants "intentionally" failed to answer. Although plaintiff has gone to great lengths to file proofs of service and declarations in support of service, the undersigned finds that defendants did not intentionally fail to answer as described in <u>Mesle</u>. Notably, the undersigned expressed concerns regarding the sufficiency of service by plaintiff during the hearing on plaintiff's motion for default judgment. After that hearing, and shortly after plaintiff again served defendants, defendants appeared in this action. Since their appearances in this action, defendants have actively defended themselves and sought to have this case resolved on the merits. On the record before the court, the undersigned does not find that defendants, who are proceeding pro se, possessed the bad faith required to deny the motions to set aside the entries of default.

      B.    <u>Whether Defendants Have A Meritorious Defense</u>

The parties disagree about whether defendants have a meritorious defense in this case. Regarding whether a defaulting defendant has a meritorious defense, the Ninth Circuit Court of Appeals has stated that, at least in the context of relief from the entry of a default judgment, the defaulting defendant must "present the district court with specific facts that would constitute a defense." <u>Franchise Holding II</u>, 375 F.3d at 926. This burden is not "extraordinarily

10

1   heavy." <u>Mesle</u>, 615 F.3d at 1094 (citing <u>TCI Group</u>, 244 F.3d at 700).  "All that is necessary to

2   satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would

3   constitute a defense: 'the question whether the factual allegation [i]s true' is not to be determined

4   by the court when it decides the motion to set aside the default.  Rather, that question 'would be

5   the subject of the later litigation.'"  <u>Id.</u> (citing <u>TCI Group</u>, 244 F.3d at 700).

6          Here, each defendant offers the same arguments attempting to establish potential

7   defenses in this action.  First, defendants assert that they believe "that proper discovery will

8   result in additional facts that will have an impact on the end result and further lender liability."

9   (<u>See</u>, <u>e.g.</u>, A. Alizadeh's Mot. to Set Aside Clerk's Entry of Default at 4.)  Defendants' belief that

10  discovery will uncover additional facts is insufficient to establish a meritorious defense.

11  Defendants are required to actually assert the facts that would constitute a defense, not simply a

12  supposition that discovery might uncover such facts.

13         The undersigned similarly finds unpersuasive defendants' argument that "bank

14  management of the asset by both the receiver and trustee can potentially produce a higher income

15  on the sale of the asset therefore reducing the size of the deficiency."  (<u>Id.</u> at 3.)  In addition to

16  being somewhat confusing, defendants' assertion does not present a potential defense to liability

17  on the Guaranty Agreement; it suggests that the amount of liability might be reduced.

18         Additionally, however, defendants argue that plaintiff has filed a notice pursuant

19  to 11 U.S.C. § 1111(b) in the Douglas Pointe bankruptcy proceeding and, therefore, plaintiff is

20  opting to take the property securing the underlying loan in a foreclosure proceeding.  (<u>See</u>, <u>e.g.</u>,

21  A. Alizadeh's Mot. to Set Aside Clerk's Entry of Default at 4; <u>see also</u> Notice of Election Under

22  11 U.S.C. § 1111(b)(2), <u>In re Douglas Pointe, LLC</u>, No. 09-32854, Dkt. No. 117 (Bnkr. E.D.

23  Cal.), attached as Ex. C to Response, Nov. 8, 2010.)  As a result of this filing, defendants

24  ////

25  ////

26  ////

1   contend, plaintiff gave up its deficiency rights on the underlying loan.[7]  (Id.)  Plaintiff counters

2   that defendants are liable for the full amount of the debt under the terms of the Guaranty

3   Agreement, defendants waived any defense premised on Section 1111(b) in Guaranty

4   Agreement, and, the loan is a full recourse loan.  (See Pl.'s Opp'n at 3, 5; Compl., Ex. I at 3.)

5   Rather than sort out the ultimate merits of the parties' respective positions, which is not the task

6   to be undertaken in considering a motion to set aside an entry of default, the undersigned finds

7   that defendants have alleged enough facts to justify setting aside the entry of default.  Whether

8   plaintiff's or defendants' positions wins the day is the subject of the later litigation.

9        C.    Whether Plaintiff Would Be Prejudiced By Setting Aside the Default

10              Finally, the parties dispute whether plaintiff would suffer prejudice if the court set

11   aside the entry of default.  Plaintiff contends that it would suffer the following prejudice: (1) a

12   risk of an "inability to enforce any possible judgments against Defendants"; (2) delayed

13   resolution of this case that provides defendants "with a greater opportunity for potential

14   fraudulent conveyances, the opportunity for diversion or shielding of its [sic] assets from

15   potential creditors, and has prejudice Plaintiff vis a vis other potential creditors."  (Pl.'s Opp'n

16   at 6.)

17              The Ninth Circuit Court of Appeals has held that "[t]o be prejudicial, the setting

18   aside of a judgment must result in greater harm than simply delaying resolution of the case.

19   Rather, 'the standard is whether [plaintiff's] ability to pursue his claim will be hindered."  TCI

20   Group, 244 F.3d at 701 (citing Falk v. Allen, 739 F.2d 461, 463 (9th Cir. 1984) (per curiam)).

21   Merely being forced to litigate on the merits cannot be considered prejudicial in this context.  Id.

22              The undersigned finds plaintiff's proffered bases for a finding of prejudice

23   unpersuasive.  First, no evidence in the record suggests a real risk that plaintiff will not be able to

24   _____

25      [7] Defendants also raised this defense earlier in the action, contending that plaintiff's election
     under Section 1111(b) rendered this entire action subject to dismissal.  (See Response, Nov. 8, 2010,
26   at 2-3 & Ex. C.)

enforce a judgment entered in this case against defendants if the entry of default is set aside. Plaintiff's offer no tangible proof of such a risk. Moreover, plaintiff's second basis for a finding of prejudice—that the delay of this action will permit defendants to hide or fraudulently convey assets—is supported by no evidence in the record. In the absence of any evidence of such conduct on defendants' part, plaintiff's argument appears to be speculation. And as noted above, mere delay of the resolution of the action is insufficient to show prejudice. Moreover, in regards to plaintiff's argument that it would be prejudiced relative to other creditors, there is no indication in the record that defendants have filed for bankruptcy. Thus, on the present record, plaintiff stands on equal footing with other potential creditors of defendants, if any. Accordingly, the undersigned finds that plaintiff's ability to pursue its claim will not be hindered by setting aside the entry of default.

Taking all of the factors in consideration, the undersigned recommends that the clerks' entry of default be set aside. In addition to the three factors discussed above, the undersigned gives great weight to the established policies favoring resolution of claims on the merits and disfavoring default judgments, especially when a pro se party is the subject of the default.

IV.  CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.   Defendants' motions to set aside the entry of default (Dkt. Nos. 43, 44) be granted;

2.   The Clerk's Certificate of Entry of Default (Dkt. No. 9) be set aside; and

3.   Plaintiff's motion for default judgment (Dkt. No. 11) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also E. Dist. Local Rule 304(b).

13

Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  E. Dist. Local Rule 304(d). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO RECOMMENDED.

DATED:  April 27, 2011

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

14